# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **DIANE D. JONES and JAMES ARNOLD,** | |
| Plaintiffs, | Case No. 1:19-cv-501-JG |
| | **DEFENDANT REALPAGE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS** |
| v. | District Court Judge James S. Gwin |
| **REALPAGE, INC. d/b/a LEASINGDESK SCREENING,** | Magistrate Judge William H. Baughman |
| Defendant. | |

## DEFENDANT REALPAGE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS

Defendant RealPage, Inc. ("RealPage"), through its undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(2) and 28 U.S.C. § 1404(a), respectfully moves this Court to dismiss the First Amended Class Action Complaint (Dkt. No. 12, the "Complaint") due to lack of personal jurisdiction, or alternatively, to transfer this action to the Northern District of Texas, Dallas Division, for the convenience of the parties and witnesses and in the interest of justice.

In support of this Motion, RealPage submits the following memorandum of points and authorities, in accordance with Local Rule 7.1(c). In addition, pursuant to Local Rule 7.1(f), RealPage provides a brief statement of the issues to be decided and a summary of the argument presented below:

## Statement of the Issues to be Decided

1.    Whether this Court has personal jurisdiction over RealPage in this case.

2.    If personal jurisdiction is present, whether the case should be transferred to the Northern District of Texas, Dallas Division.

## Summary of Argument

This Court lacks personal jurisdiction over RealPage because the requirements of the federal Due Process Clause are not satisfied.  Plaintiffs cannot establish that the Court has either specific or general personal jurisdiction over RealPage.  The Court lacks general jurisdiction over RealPage because RealPage is not at home in Ohio.  Instead, RealPage is incorporated in Delaware, with its principal place of business in Richardson, Texas.  The Court lacks specific jurisdiction over RealPage because the Complaint implicates screening reports generated by RealPage's software in Texas and sent to Georgia and Colorado.  Thus, RealPage lacks any contact that was directed into Ohio with respect to the claims alleged in this case.  Because the Court lacks personal jurisdiction over RealPage, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

Alternatively, should the Court not dismiss the case due to lack of personal jurisdiction, the Court should transfer this action to the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses and in the interest of justice.

Dated: June 10, 2019                TROUTMAN SANDERS LLP

By:    /s/ Ronald I. Raether
          Ronald I. Raether (Bar No. 0067731)
          5 Park Plaza, Suite 1400
          Irvine, California 92614
          Tel: (949) 622-2700
          Fax: (949) 622-2739
          Ron.Raether@troutman.com

          *Attorneys for Defendant*
          *RealPage Inc., d/b/a LeasingDesk Screening*

# TABLE OF CONTENTS

**Page**

I.      FACTUAL BACKGROUND ........................................................................... 1

II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER REALPAGE IN THIS CASE ......... 2

      A.     The Relevant Legal Standards for Establishing Personal Jurisdiction ................. 2

      B.     The Requirements of The Federal Due Process Clause Are Not Satisfied ........... 3

          1.     The Northern District of Ohio Does Not Have General Personal Jurisdiction over RealPage ......................................................... 3

          2.     The Northern District of Ohio Does Not Have Specific Personal Jurisdiction over RealPage ......................................................... 6

               a.     RealPage does not have sufficient minimum contacts directed to Ohio .................................................................... 6

               b.     It would offend notions of fair play and substantial justice to subject RealPage to jurisdiction in Ohio ................................ 10

III.    IF THE CASE IS NOT DISMISSED, IT SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS ...................................................... 11

      A.     The Relevant Legal Standards for Transferring Venue ....................................... 12

      B.     The Action Could Have Been Filed in the Northern District of Texas ............... 12

      C.     The Northern District of Texas is Convenient for the Parties and Witnesses .............................................................................................. 13

      D.     Accessibility of Evidence ................................................................. 14

      E.     Availability of Process to Make Reluctant Witnesses Testify ........................... 15

      F.     Costs of Obtaining Willing Witnesses ................................................. 15

      G.     Practical Problems of Trying the Case Most Expeditiously and Inexpensively .............................................................................. 16

      H.     The Interests of Justice .................................................................... 17

      I.     Plaintiffs' choice of forum should receive little weight .................................... 17

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ahkeo Labs LLC v. Plurimi Inv. Managers, LLP*,
    293 F. Supp. 3d 741 (N.D. Ohio 2018)..................................................................5

*Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*,
    503 F.3d 544 (6th Cir. 2007) .............................................................................7

*Alvarez v. CoreLogic Nat'l Background Data, LLC*,
    No. 18-cv-1234, 2018 U.S. Dist. LEXIS 111697 (E.D. Pa. July 5, 2018) ...............8

*Bird v. Parsons*,
    289 F.3d 865 (6th Cir. 2002) .............................................................................2

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)..........................................................................6, 7, 9, 11

*Byerson v. Equifax Info. Services, LLC*,
    467 F. Supp. 2d 627 (E.D. Va. 2006) ................................................................17

*C.S. v. Corp. of the Catholic Bishop of Yakima*,
    No. 13-cv-3051, 2013 U.S. Dist. LEXIS 138862 (E.D. Wash. Sept. 25, 2013)........11

*Calder v. Jones*,
    465 U.S. 783 (1984)........................................................................................7, 9

*Conn v. Zakharov*,
    667 F.3d 705 (6th Cir. 2012) ...................................................................2, 3, 11

In the matter of *Daimler AG v. Bauman*,
    571 U.S. 117 (2014)........................................................................................4, 5

*Far W. Capital, Inc. v. Towne*,
    46 F.3d 1071 (10th Cir. 1995) ..........................................................................7

*Fortis Corporate Ins. v. Viken Ship Mgmt.*,
    450 F.3d 214 (6th Cir. 2006) .............................................................................6

*Gillison v. Lead Express, Inc.*,
    No. 16-cv-41, 2017 U.S. Dist. LEXIS 48557 (E.D. Va. Mar. 30, 2017)...................9

*Gomez v. Kroll Factual Data, Inc.*,
    No. 13-cv-0445, 2014 U.S. Dist. LEXIS 51303 (D. Colo. Apr. 14, 2014).............16

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011) ...................................................................................................4

*Harris v. Trans Union, LLC*,
    197 F. Supp. 2d 200 (E.D. Pa. 2002) ......................................................................10

*Hertges v. Experian Info. Solutions, Inc.*,
    No. 13-cv-2699, 2014 U.S. Dist. LEXIS 12406 (D. Minn. Jan. 30, 2014)...............10

*In re Horseshoe Entertainment*,
    337 F.3d 429 (5th Cir. 2003) ...................................................................................16

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)..............................................................................................3, 10

*Kampert v. Raymond James Fin., Inc.*,
    No. 17-cv-01036, 2018 U.S. Dist. LEXIS 75784 (D. Or. Feb. 22, 2018) .................9

*King v. Corelogic Credco, LLC*,
    No. 17-cv-761, 2018 U.S. Dist. LEXIS 99467 (E.D. Va. June 13, 2018) ...............18

*Klutho v. 21st Century Ins. Co.*,
    No. 07-cv-4111, 2007 U.S. Dist. LEXIS 86947 (N.D. Ill. Nov. 26, 2007) ...............14

*Maclin v. Reliable Reports of Tex., Inc.*,
    314 F. Supp. 3d 845 (N.D. Ohio 2018)......................................................................5

*MAG IAS Holdings, Inc. v. Schmuckle*,
    854 F.3d 894 (6th Cir. 2017) .....................................................................................8

*Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC*,
    No. 16-cv-63, 2016 U.S. Dist. LEXIS 171123 (E.D. Tenn. Dec. 12, 2016) ...........17

*Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*,
    954 F.2d 1174 (6th Cir. 1992) ...................................................................................2

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ...................................................................................7

*Moses v. Bus. Card Express, Inc.*,
    929 F.2d 1131 (6th Cir. 1991) .................................................................................12

## TABLE OF AUTHORITIES
### (continued)

Page

*Murphy v. Trans Union, LLC*,
  No. 12-cv-499, 2012 U.S. Dist. LEXIS 115610 (E.D. Pa. Aug. 15, 2012) ............................14

*Reese v. CNH Am. LLC*,
  574 F.3d 315 (6th Cir. 2009) ...................................................................................................12

*Reynolds v. Int'l Amateur Athletic Fed'n*,
  23 F.3d 1110 (6th Cir. 1994) .....................................................................................................7

*S. Mach. Co. v. Mohasco Indus., Inc.*,
  401 F.2d 374 (6th Cir. 1968) .....................................................................................................6

*Scotts Co. v. Aventis S.A.*,
  145 F. App'x 109 (6th Cir. 2005) ...............................................................................................7

*Se. Textile Mach., Inc. v. H. Warshow & Sons, Inc.*,
  No. 05-cv-00066, 2006 U.S. Dist. LEXIS 5366 (W.D. Va. Jan. 27, 2006)............................15

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988)...................................................................................................................12

*Third Nat'l Bank v. Wedge Grp., Inc.*,
  882 F.2d 1087 (6th Cir. 1989) ...................................................................................................3

*Walden v. Fiore*,
  571 U.S. 277 (2014)......................................................................................................7, 8, 9, 10

*Weinstein v. Pullar*,
  No. 13-cv-4502, 2013 U.S. Dist. LEXIS 178252 (D.N.J. Dec. 19, 2013)..............................10

*Zellerino v. Roosen*,
  118 F. Supp. 3d 946 (E.D. Mich. 2015)..................................................................................10

*Zimmer Enters. v. Atlandia Imps., Inc.*,
  478 F. Supp. 2d 983 (S.D. Ohio 2007) ....................................................................................16

**Statutes**

15 U.S.C. § 1681e(b) ....................................................................................................................16

15 U.S.C. § 1681p.........................................................................................................................12

28 U.S.C. § 1391(b)(1) and (2) ....................................................................................................13

**TABLE OF AUTHORITIES**
**(continued)**

Page

28 U.S.C. § 1404...........................................................................................................14

28 U.S.C. § 1406(a) ......................................................................................................12

Ohio Rev. Code § 2307.382(A)(1)-(9) ...........................................................................3

**Other Authorities**

4 Charles Allan Wright & Arthur Miller, FEDERAL PRACTICE AND
    PROCEDURE § 1067 (1987) .......................................................................................3

Federal Rule of Civil Procedure 12(b)(2) ...............................................................1, 2, 1

Local Rule 7.1(c) ............................................................................................................1

Local Rule 7.1(f)........................................................................................................1, 19

**MEMORANDUM IN SUPPORT OF DEFENDANT REALPAGE, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR, ALTERNATIVELY, TO TRANSFER TO THE NORTHERN DISTRICT OF TEXAS**

Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 28 U.S.C. § 1404(a), RealPage respectfully moves this Court to dismiss the Complaint due to lack of personal jurisdiction, or alternatively, to transfer this action to the Northern District of Texas, Dallas Division, for the convenience of the parties and witnesses and in the interest of justice.

## I.     FACTUAL BACKGROUND

RealPage is an industry-leading provider of property management software systems and related services for the rental housing industry.  One of the important systems that RealPage offers is a tenant background screening solution known as "LeasingDesk" that enables owners and managers of rental housing properties to keep their communities safe by screening potential tenants for matching criminal records.  RealPage is incorporated in Delaware, with its principal place of business in Richardson, Texas.  (Declaration of James Hilliard [the "Hilliard Decl."], at ¶¶ 3-4.)

Plaintiffs' claims arise under the Fair Credit Reporting Act, 15 U.S.C. 1681, *et seq.* (the "FCRA").  (FAC, ¶ 1.)  Plaintiffs allege that RealPage violated the FCRA in connection with: (1) the preparation of background screening reports relating to Plaintiffs through use of the LeasingDesk software; and (2) RealPage's response to a dispute submitted by Plaintiff James Arnold over his screening report.  (*Id.*, ¶¶ 23-44, 53, 55; Hilliard Decl., at ¶ 5.)  The first claim is asserted by both Plaintiffs on behalf of a putative class.  (FAC, ¶ 53.)  The second claim is asserted only individually by Plaintiff Arnold.  (*Id.*, ¶ 55.)

Plaintiff Diane Jones is an Ohio resident.  (FAC, ¶ 6.)  Ms. Jones alleges that the screening report at issue was prepared in connection with her application for housing at the Marietta Road Senior High Rise apartment complex (the "Marietta Complex"), which is located in Atlanta, Georgia.  (*Id.* at ¶ 24; Hilliard Decl., at ¶ 6.)

- 1 -

Plaintiff James Arnold is a Colorado resident.  (FAC, ¶ 7.)  Mr. Arnold alleges that the screening reports at issue were prepared in connection with his applications for housing at the San Juan and Anciano apartment complexes (the "San Juan Complex" and "Anciano Complex," respectively), which are both located in Montrose, Colorado.  (*Id.* at ¶¶ 31-32; Hilliard Decl., at ¶ 7.)  Thus, Plaintiff Arnold has no connection at all to Ohio.

There are no allegations in the Complaint that any of the allegedly wrongful acts occurred in Ohio.  (*See* FAC, generally.)  Instead, the Complaint implicates screening reports generated by RealPage's software in Texas and sent to Georgia and Colorado.  In fact, the only allegations purporting to demonstrate any connection between any of the parties and this judicial district is that Ms. Jones resides in Ohio and the claim that RealPage "regularly conducts business in the State of Ohio."  (*Id.*, ¶¶ 6, 8.)  But, for the reasons below, those facts are insufficient to support an assertion of personal jurisdiction over RealPage in this action.

## II.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COURT DOES NOT HAVE PERSONAL JURISDICTION OVER REALPAGE IN THIS CASE

### A.  The Relevant Legal Standards for Establishing Personal Jurisdiction

Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process.  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).  Because Ohio's long-arm statute does not reach the limits of the Due Process Clause, Plaintiffs must demonstrate both that: (1) Ohio's long-arm statute allows for the exercise of personal jurisdiction; and (2) that the exercise of personal jurisdiction is consistent with the Federal Due Process Clause.  *See*, *e.g.*, *Conn v. Zakharov*, 667 F.3d 705, 711-12 (6th Cir.

- 2 -

2012).[1]  "The plaintiff bears the burden of establishing through 'specific facts' that personal jurisdiction exists over the non-resident defendant, and the plaintiff must make this demonstration by a preponderance of the evidence."  *Id.* at 711.

> ### B.  The Requirements of The Federal Due Process Clause Are Not Satisfied

The Due Process Clause requires that the defendant have sufficient "minimum contacts" with the forum state that satisfy "traditional notions of fair play and substantial justice."  *Third Nat'l Bank v. Wedge Grp., Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Personal jurisdiction pursuant to the Due Process Clause can be established by either specific or general personal jurisdiction.  *See id.*  Plaintiffs do not specifically allege in the Complaint whether the Northern District of Ohio has specific or general personal jurisdiction over RealPage.  Therefore, this Motion will address both types of personal jurisdiction and will show that this Court cannot exercise either specific or general personal jurisdiction over RealPage.

> ### 1.  The Northern District of Ohio Does Not Have General Personal Jurisdiction over RealPage

For general jurisdiction over a defendant to comport with due process, the defendant's contacts with the forum must be "continuous and systematic."  *Conn*, 667 F.3d at 713.  Courts have been very reluctant to find that a party is subject to general jurisdiction and "threshold contacts required for general jurisdiction are very substantial indeed."  4 Charles Allan Wright &

---

[1] For this reason, the Ohio long-arm statute imposes an additional barrier to this Court's attempted exercise of personal jurisdiction, and Plaintiffs must also meet one of the disjunctive provisions of the statute to proceed in this Court in addition to satisfying due process.  *See* Ohio Rev. Code § 2307.382(A)(1)-(9).  While Plaintiff Jones has alleged that she suffered injury in Ohio and that RealPage conducts business in Ohio for purposes of that long-arm statute, Plaintiff Arnold has no possible basis to satisfy any of the nine provisions of that statute.  *See id.*  Thus, Plaintiff Arnold should be dismissed on that threshold basis.

Regardless, the issue of satisfaction of the long-arm statute is ultimately immaterial, as the attempted assertion of jurisdiction over RealPage by Plaintiff Jones *and* Plaintiff Arnold fails for the due process reasons set forth below.

Arthur Miller, FEDERAL PRACTICE AND PROCEDURE § 1067, at 295-98 (1987).  Therefore, "the paradigm forum for the exercise of general jurisdiction . . . for a corporation . . . [is] one in which the corporation is fairly regarded as at home."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Here, that is Delaware and Texas.  (Hilliard Decl., at ¶¶ 3-4.)

The exceptionally-high standard for the exercise of general jurisdiction was recently reaffirmed by the Supreme Court.  In the matter of *Daimler AG v. Bauman*, 571 U.S. 117 (2014), the Court confirmed that merely conducting business in a forum, even very substantial and systematic business, is insufficient to support general personal jurisdiction over a corporate defendant.  In *Daimler*, the Supreme Court addressed whether the contacts of Mercedes Benz USA, Inc. ("MBUSA") within the state of California were sufficient to allow a California federal court to exercise personal jurisdiction over MBUSA's parent company.[2]

The Supreme Court first made clear that a corporation is not "at home" in "every state in which it engages in a substantial, continuous, and systematic course of business."  *Id*. at 136-38.  The Court characterized that former approach as "unacceptably grasping."  *Id*. at 138.  Rather, the Court explained that, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"  *Id*. at 137.

The Court did not "foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id*. at 139 n.19 (emphasis added).  But, the Court concluded that even considering both MBUSA's and Daimler AG's business activities in California – including the tens of thousands of vehicles that MBUSA sells in California, its regional headquarters, and its statewide service and sales support – was insufficient to find general jurisdiction.  Instead, the Court explained:

---

[2] The Court assumed without deciding that MBUSA's affiliation with Daimler AG was sufficient such that the California court could impute MBUSA's contacts in the forum to Daimler AG.  *See id*. at 136.  Thus, the analysis ultimately devolved to whether MBUSA's contacts allowed for the exercise of personal jurisdiction, even though the root question involved Daimler AG itself.

> If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which MBUSA's sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.

*Id*. at 139 (quotation marks omitted). The Court added that even considering MBUSA's activities, Daimler AG's California contacts "plainly do not approach th[e] level" of exceptional in-forum conduct that could subject it to general personal jurisdiction. *Id*. at 139 n.19.

Courts in the Sixth Circuit have closely followed the Supreme Court's opinion in *Daimler* and have consistently affirmed that the standard for finding general jurisdiction is extraordinarily high. *See*, *e.g.*, *Ahkeo Labs LLC v. Plurimi Inv. Managers, LLP,* 293 F. Supp. 3d 741, 749 (N.D. Ohio 2018) (emphasizing that the paradigmatic grounds for general jurisdiction are (1) place or places of incorporation and (2) principal place of business and noting that "[e]stablishing that the Court has general jurisdiction over a defendant is an exceedingly difficult task" and "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there"); *Maclin v. Reliable Reports of Tex., Inc.*, 314 F. Supp. 3d 845, 849 (N.D. Ohio 2018) ("Maintaining extensive operations within a state alone does not satisfy the general-jurisdiction exception.").

When weighed against this authority, there is no conceivable basis to find that RealPage is subject to general jurisdiction in Ohio. RealPage is not engaged in "substantial" or "exceptional" activity within the Northern District of Ohio to overcome the high standards of *Daimler* or to render it "at home" in Ohio. RealPage is incorporated in Delaware and headquartered and conducts its operations with respect to the LeasingDesk screening platform in Richardson, Texas, which is within the Northern District of Texas. (Hilliard Decl., at ¶¶ 3-4; <u>United States District Court, Northern District of Texas</u>, Locate Venue by City or County (June 3, 2019), http://www.txnd.uscourts.gov/city-data/dallas-division.) RealPage has no offices or data servers in Ohio, and only 1 of RealPage's 283 employees involved with the LeasingDesk product works remotely in Ohio from a home office. (Hilliard Decl., at ¶¶ 8-10.) RealPage also conducts business nationwide, and it does not focus its business activities in any particular state, including the State

of Ohio.  (Hilliard Decl., at ¶ 11.)  For those reasons, there can be no assertion of general jurisdiction over RealPage in this case before this Court.

### 2.     The Northern District of Ohio Does Not Have Specific Personal Jurisdiction over RealPage

Given the lack of general jurisdiction, Plaintiffs must establish that this Court has specific personal jurisdiction over RealPage for this lawsuit to continue here.  They cannot do so.  Specific personal jurisdiction exists when the defendant has purposefully directed its activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 218 (6th Cir. 2006).  For a court properly to exercise specific jurisdiction over a defendant under the Due Process Clause, the plaintiff must satisfy a three-part test in the Sixth Circuit: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state; (2) the cause of action must arise from the defendant's activities there; and (3) the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.  *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

### a.     RealPage does not have sufficient minimum contacts directed to Ohio

With respect to the issue of sufficient "minimum contacts," a defendant may be said to have established minimum contacts if there is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," thus ensuring that "a defendant will not be haled into a jurisdiction solely as a result of . . . 'attenuated' contacts." *Burger King*, 471 U.S. at 475 (citations omitted).  Hence, to establish specific jurisdiction, the defendant must have purposefully directed its activities at the forum, and the claims in the action

must then arise out of those specific activities.  *Id.* at 472.

Where a plaintiff alleges that a defendant has caused him actual damages, as here, a plaintiff may establish specific jurisdiction under the "effects test" set forth by the Supreme Court in *Calder v. Jones*, 465 U.S. 783 (1984).  Due to the absence of any substantive connection between Plaintiffs' claims and this forum, RealPage anticipates that Plaintiff Jones will invoke that effects test in support of her claim of personal jurisdiction.

However, "the Sixth Circuit, as well as other circuits," has long "narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong."  *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007); *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n.1 (6th Cir. 2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises."); *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994) (distinguishing *Calder* and making a particularized inquiry of the relations and dealings between the parties to find that an allegedly defamatory article did not establish sufficient minimum contacts); *accord Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1143 (9th Cir. 2017) ("the mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."); *Far W. Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995) ("Our review of these post-*Calder* decisions indicates that the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts.").

Those Sixth Circuit limitations were confirmed by the Supreme Court in *Walden v. Fiore*, 571 U.S. 277 (2014), where the Court addressed "whether a court in Nevada may exercise personal jurisdiction over a defendant on the basis that he knew his allegedly tortious conduct in Georgia would delay the return of funds to plaintiffs with connections to Nevada."  *Id.* at 279.  The Supreme

- 7 -

Court reaffirmed that due process dictates that "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. "Due process . . . requires that a defendant be haled into court in a forum State based on [its] own affiliation with the State." *Id.* at 286; *accord MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 901 (6th Cir. 2017) (plaintiffs must do more than claim that defendant's actions affected them in Michigan and must show that defendant had some level of contact with the state).

With those standards in mind, RealPage had *no contact* with Ohio with respect to the allegations here. Ms. Jones' claims arise from the Marietta Complex, in Georgia, generating a tenant screening report from RealPage's LeasingDesk software in Texas. (FAC, ¶¶ 24-26; Hilliard Decl., ¶¶ 6, 13.) Likewise, Mr. Arnold's claims arise from the San Juan and Anciano Complexes, in Colorado, generating tenant screening reports from RealPage's LeasingDesk software in Texas. (FAC, ¶¶ 31-33; Hilliard Decl., ¶¶ 7, 13.) Simply put, this is not a matter where RealPage simply lacks "sufficient contacts" with Ohio. Instead, it is the situation where RealPage lacks *any contact* that was directed into Ohio with respect to the claims alleged in this case.

Numerous courts have confirmed the need for dismissal in similar circumstances. For example, last year, a Pennsylvania court rejected a claim of personal jurisdiction through analysis that is directly applicable to the issues in dispute here, the court held:

> [Defendant] maintains a nationwide database of public records. It then sells access to this information to background screening companies that have been engaged by employers to conduct background screenings on prospective employees . . . . [Defendant] is organized in the state of Delaware and maintains its principal place of business in Texas. As a result, it is not subject to general jurisdiction in this district.
>
> Nor is it subject to specific jurisdiction here. [Defendant] performed the background check on [Plaintiff] on behalf of its client ADP, which is based in New Jersey. [Defendant] then submitted to ADP its information on Alvarez through electronic means. It had no contact with [Plaintiff] or his prospective employer Manor College in Pennsylvania. [Defendant] maintains no employees or offices in Pennsylvania. Under these circumstances, [Defendant] has not purposefully directed its activities at this forum.

*Alvarez v. CoreLogic Nat'l Background Data, LLC*, No. 18-cv-1234, 2018 U.S. Dist. LEXIS

111697, at *1, 3 (E.D. Pa. July 5, 2018).  That holding is equally applicable here.

Another recent decision to consider this scenario is *Kampert v. Raymond James Fin., Inc.*, No. 17-cv-01036, 2018 U.S. Dist. LEXIS 75784, *6-10 (D. Or. Feb. 22, 2018).  In that case, the defendant was accused of violating the FCRA with respect to an alleged denial of an employment opportunity.  *Id.* at *6.  The defendant was located in Florida, the plaintiff was located in Oregon, and the consumer report at issue was sent by the defendant to a "recipient and intermediary" located in Missouri, meaning that the "defendant's only contact with plaintiff was through [the intermediary] in Missouri."  *Id.* at *8.  Based on those facts, the court undertook an extensive analysis of personal jurisdiction, including after the Supreme Court's recent decision in *Walden*.  *Id.* at *9-10.  The court held that specific personal jurisdiction was lacking.  "Defendant did not create contacts with the forum state underlying this litigation.  Instead, plaintiff's own evidence demonstrates that [the Missouri-based intermediary] reached-out to defendant in Florida."  *Id.* at *8.  The same is true here, where Georgia and Colorado-based properties requested search results from out-of-state RealPage, and where RealPage had no contact with Plaintiffs.

Yet another court reached the same result in *Gillison v. Lead Express, Inc.*, No. 16-cv-41, 2017 U.S. Dist. LEXIS 48557, *29-35 (E.D. Va. Mar. 30, 2017).  In *Gillison*, the court considered an alleged FCRA violation where an out-of-state defendant allegedly "obtained the consumer reports from Clarity, a Nevada corporation."  *Id.* at *25.  The court held that "[o]btaining information on Virginia consumers from a third-party without any direct interaction with those Virginia consumers does not establish purposeful availment."  *Id.* at *25-26 (citing, among other Supreme Court decisions, *Walden* and *Burger King*).  And, rejecting plaintiffs' arguments based on the *Calder* "effects test," the court held that "[b]ecause the Plaintiffs allege no meaningful Virginia contacts by the Defendants that accompanied the Plaintiffs' purported injuries in Virginia, such as actions purposefully directed at Virginia, the Court cannot exercise personal jurisdiction over the Defendants on the basis of the effects test."  *Id.*  That is also the situation here, where RealPage took no action in Ohio.

Many other courts have reached a similar holding in similar circumstances.  *See*, *e.g.*,

*Zellerino v. Roosen*, 118 F. Supp. 3d 946, 952 (E.D. Mich. 2015) ("Applying those principles [from *Walden*] here, it is apparent that the defendants' conduct of accessing the plaintiff's credit report, which presumably took place in California, cannot furnish a basis for them to be sued in a Michigan court, even though the plaintiff felt the impact of that privacy breach in Michigan."); *Hertges v. Experian Info. Solutions, Inc.*, No. 13-cv-2699, 2014 U.S. Dist. LEXIS 12406, at *9-10 (D. Minn. Jan. 30, 2014) ("None of these allegations is alleged to involve Minnesota.  There is no evidence or assertion, for example, that Western investigated Hertges's dispute here or reported derogatory credit information to Experian in Minnesota."); *Weinstein v. Pullar*, No. 13-cv-4502, 2013 U.S. Dist. LEXIS 178252, *2-18 (D.N.J. Dec. 19, 2013) (dismissing the matter for lack of personal jurisdiction with respect to FCRA claim where plaintiffs alleged that Georgia-based defendants conspired together to "obtain consumer reports" on her without a permissible purpose to do so, but where there was no connection to the forum except for the location of the plaintiffs); *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 205 (E.D. Pa. 2002) ("It was TransUnion which initiated the request for information, and TXU simply sent the information to the location requested by Trans Union.  It was not targeted at Pennsylvania.  The mere fact that a Trans Union office in the forum was the recipient of the forms does not create personal jurisdiction here in an action brought by Harris against TXU.").

Given this authority and the facts present here, this Court must find that there are not "sufficient contacts" between RealPage and Ohio.  Accordingly, this action must be dismissed.

### b.    It would offend notions of fair play and substantial justice to subject RealPage to jurisdiction in Ohio

Although academic in light of the lack of sufficient contacts between RealPage and Ohio, the exercise of personal jurisdiction over RealPage in Ohio would also offend traditional notions of "fair play and substantial justice."  *See Int'l Shoe Co.*, 326 U.S. at 316.

The determination of whether the exercise of personal jurisdiction would offend notions of fair play and substantial justice depends on an evaluation of the following factors: (1) the burden

on the defendant ; (2) forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies. *Conn*, 667 F.3d at 718 (quoting *Burger King*, 471 U.S. at 477). Those factors also favor dismissal.

Here, RealPage made no contact with Ohio in connection with the claims in this case. Yet, it is being asked to defend a claim in Ohio relating to a search query that was submitted by Georgia and Colorado-based apartment complexes. The relevant sources of proof for RealPage's defense are all located out of state. Simply put, litigation here is not consistent with notions of fair play and substantial justice when RealPage has no relevant connection to this forum and would be substantially inconvenienced by having to defend itself here. *See, e.g.*, *C.S. v. Corp. of the Catholic Bishop of Yakima*, No. 13-cv-3051, 2013 U.S. Dist. LEXIS 138862, *21-22 (E.D. Wash. Sept. 25, 2013) ("The Eastern District of Texas remains available to Plaintiff as an alternative forum [and] on balance, the above factors weigh squarely in the Beaumont Diocese's favor. The fact the Beaumont Diocese's only contact with Washington was a single letter of recommendation submitted in response to a formal request for information by the Yakima Diocese is a particularly compelling circumstance . . . . [T]he Court concludes that requiring the Beaumont Diocese to defend in Washington based upon this *de minimis* contact would offend traditional notions of fair play and substantial justice.").

## III.   IF THE CASE IS NOT DISMISSED, IT SHOULD BE TRANSFERRED TO THE NORTHERN DISTRICT OF TEXAS

If the Court does not dismiss the matter based on lack of personal jurisdiction, it should transfer the case to the Northern District of Texas, Dallas Division, because Plaintiffs could have

brought the case in that district and it is the most convenient forum to litigate Plaintiff's FCRA claims on behalf of the proposed national class.

### A.     The Relevant Legal Standards for Transferring Venue

Should the Court determine not to dismiss the Complaint, § 1406(a) mandates that the Court transfer the case to "any district or division in which it could have been brought." 28 U.S.C. § 1406(a). That statutory requirement complements the transfer provision set forth under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.*

Section § 1404(a) "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (citation omitted).

In evaluating a motion to transfer venue, the Court must weigh the relative conveniences of the current district against the transferee district. *See* 28 U.S.C. § 1404(a); *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991). In ruling on a motion to transfer under §1404(a), a district court should consider six factors: "the convenience of the parties and witnesses, the accessibility of evidence, the availability of process to make reluctant witnesses testify, the costs of obtaining willing witnesses, the practical problems of trying the case most expeditiously and inexpensively and the interests of justice." *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (citations omitted).

### B.     The Action Could Have Been Filed in the Northern District of Texas

There can be no dispute that this action could have been brought in the Northern District of Texas, which is where RealPage maintains its principal place of business. The FCRA grants original jurisdiction to federal courts. *See* 15 U.S.C. § 1681p. Federal claims may be brought in

the district where a defendant resides or in the district where a substantial part of the omissions or acts giving rise to the action occurred. 28 U.S.C. § 1391(b)(1) and (2). Accordingly, this FCRA action could have been brought in the Northern District of Texas because RealPage resides there and because, at all relevant times, the business operations implicated by Plaintiffs' claims have been in Richardson, Texas, which would ground jurisdiction in the United States District Court for the Northern District of Texas. (Hilliard Decl., ¶¶ 2-4, 12.)

**C.** **The Northern District of Texas is Convenient for the Parties and Witnesses**

Since this matter could have been brought in the Northern District of Texas, in deciding whether to transfer venue, the Court must evaluate the relevant factors used in the Sixth Circuit. In this case, all the relevant factors weigh heavily in favor of transfer to Texas.

This action centers on RealPage's electronic return of background screening reports as to the named Plaintiffs, as well as RealPage's return of background screening reports for a nationwide class of consumers. With that context, the principles supporting transfer are as follows:

- RealPage is a foreign corporation with no facilities in Ohio;

- RealPage has only 1 employee located in Ohio who works with LeasingDesk, which is a small fraction of its overall headcount of 283 employees;

- RealPage electronically returned the background screening reports at issue in this case from Texas to prospective properties in Georgia and Colorado;

- The RealPage witnesses with knowledge regarding the allegations in this case are located in Richardson, Texas;

- RealPage's IT team and related operations are located in Richardson, Texas;

- The relevant data servers and documents are located in Richardson, Texas;

- Due to its nationwide customer base, the vast majority of background screening reports transmitted by RealPage during the alleged class period would have been generated on individuals residing outside of Ohio; and

- RealPage serves clients on a nationwide basis, meaning that the vast majority of RealPage's property customers are located outside of Ohio.

(*See generally* Hilliard Decl.)

Indeed, "[m]ultiple courts considering § 1404 transfer motions in FCRA cases have noted that the situs of the material events," and thus where the action should be heard, "is generally the place where the defendant credit reporting agency conducted its business." *Murphy v. Trans Union, LLC*, No. 12-cv-499, 2012 U.S. Dist. LEXIS 115610, at *12 (E.D. Pa. Aug. 15, 2012) (granting motion to transfer venue in putative FCRA class action on that basis); *see also Klutho v. 21st Century Ins. Co.*, No. 07-cv-4111, 2007 U.S. Dist. LEXIS 86947, at *8 (N.D. Ill. Nov. 26, 2007) (granting a § 1404(a) motion in a FCRA class action, despite the fact that some class members resided in the forum, finding that the primary issue was whether defendant acted willfully and that the alleged conduct did not occur in Illinois).

In contrast, apart from the legally-irrelevant connection of Plaintiff Jones to Ohio, this case has no connection to this forum. Applying these private and public factors to the present litigation shows that transferring this action to the Northern District of Texas would be convenient and in the interests of justice.

## D. Accessibility of Evidence

The only connection to Ohio is that Plaintiff Jones currently resides here. However, as noted below, that is afforded little weight, particularly in view of the fact that this case will focus on RealPage's business operations, with consumer litigants like Plaintiffs invariably possessing little by way of documents or other proof. Plaintiffs also will be deposed where they reside, regardless of whether the case is transferred to Texas. In contrast, RealPage's employees, witnesses, and IT operations at issue in connection with the LeasingDesk platforms are generally based in Richardson, Texas. RealPage maintains documentary evidence, its servers, and its

internal systems in Texas.  Further, Plaintiff Arnold resides in Colorado, meaning that this forum is inconvenient for him as well.  Thus, the balance of conveniences as to accessibility of evidence weighs in favor of transfer to Texas.

E.     Availability of Process to Make Reluctant Witnesses Testify

The availability of compulsory process also favors transfer to Texas.  Specifically, all of RealPage's witnesses and personnel that work with the LeasingDesk platform are outside of the subpoena power of this Court, including all of the core witnesses with respect to operational, management, and IT issues.  Thus, the retirement or separation of any of those employees from RealPage during the pendency of this action would preclude RealPage's ability to compel their attendance at trial and thus hamper its ability to mount its defense.  That favors transfer.

The location of other third-party witnesses is neutral because those witnesses reside outside of both Texas and Ohio.  For example, the properties where Plaintiffs applied to rent apartments – the Marietta, San Juan, and Anciano Complexes – are located in Georgia and Colorado.  Thus, in making a choice between Ohio and Texas, there would be no difference with respect to the availability of process over those out-of-state, third-party witnesses.

F.     Costs of Obtaining Willing Witnesses

"The ability to conduct a trial in a manner that does not 'unduly burden' the witnesses is of central importance in making a trial easy, expeditious, and inexpensive."  *Se. Textile Mach., Inc. v. H. Warshow & Sons, Inc.*, No. 05-cv-00066, 2006 U.S. Dist. LEXIS 5366, at *6 (W.D. Va. Jan. 27, 2006).  As would be expected, given the far greater factual connection to Texas, the party and witness convenience factors weigh strongly in favor of transfer to Texas, which is the principal location of RealPage's employees with knowledge of the claims asserted.

It is obvious that it is more convenient for witnesses to testify at home and that additional distance means additional travel time; additional travel time increases the probability for meal and

lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.  RealPage's business disruption and cost of witness transportation and lodging would impose significant burdens to defend and try this case in Ohio, which is more than a thousand miles from Richardson, Texas.  This is compared to the cost of one witness, Plaintiff Jones, having to travel from Ohio to Texas simply for purposes of any evidentiary hearings and then trial.  Further, with respect to Plaintiff Arnold, he resides in Colorado and there cannot be any significant difference between travelling to Ohio versus Texas.

Finally, the mere fact that a small number of class members could allegedly reside in Ohio also does not favor this action remaining in the present forum because the proposed members of the putative classes would reside all over the nation, to the extent that they could be identified in the first instance.[3]  Accordingly, on balance, this factor favors transfer to Texas.

### G.      Practical Problems of Trying the Case Most Expeditiously and Inexpensively

There are no practical problems that would weigh against transferring the case, which could include whether there is the possibility of delay and prejudice if transfer is granted since: (1) RealPage has only just filed an answer concurrently with this Motion; (2) the case management conference is set for this week; (3) no deadlines have been set, including any deadline for class certification or trial; and (4) no discovery has been conducted.  *Zimmer Enters. v. Atlandia Imps., Inc.*, 478 F. Supp. 2d 983, 992 (S.D. Ohio 2007); *see also In re Horseshoe Entertainment*, 337 F.3d 429, 434 (5th Cir. 2003).  Thus, there will not be any delay or prejudice if this case is transferred to Texas, which also favors transfer.

---

[3] To be clear, as with many other attempted classes under 15 U.S.C. § 1681e(b), this class cannot be certified, nor can class members be identified.  *See, e.g.*, *Gomez v. Kroll Factual Data, Inc.*, No. 13-cv-0445, 2014 U.S. Dist. LEXIS 51303, at *10-12 (D. Colo. Apr. 14, 2014) (denying class certification and explaining that an individualized inquiry is required for "each putative class member . . . to prove that the information in the report . . . was inaccurate").  RealPage will advance those arguments at the appropriate time.

## H.      The Interests of Justice

The final § 1404(a) factor, the "interest of justice," encompasses "systemic integrity and fairness."  *Maxchief Invs. Ltd. v. Plastic Dev. Grp., LLC.*, No. 16-cv-63, 2016 U.S. Dist. LEXIS 171123, *42-43 (E.D. Tenn. Dec. 12, 2016).  That inquiry focuses on preventing "unnecessary inconvenience and expense to parties, witnesses, and the public."  *Id.*  In class action cases, "[t]he interest of justice weighs particularly heavily . . . because class actions so significantly implicate the rights of persons who are not actually before the court."  *Byerson v. Equifax Info. Services, LLC*, 467 F. Supp. 2d 627, 637 (E.D. Va. 2006).

In this case, because a nationwide class is pled, every state could be considered the home forum.  However, the material evidence and witnesses are almost exclusively in Texas.  For the same reasons, it would be unfair to burden citizens in Ohio with lengthy jury duty, including because very little of RealPage's business activity occurs relative to Ohio consumers or customers.  In addition, a federal district court in Texas would be equally capable of applying the federal law claims in this case.  Finally, as discussed above, there is no substantive nexus between Plaintiffs' claims and Ohio.  Accordingly, Ohio does not have any localized interest in deciding the controversy.  Thus, this factor weighs in favor of transfer.

## I.      Plaintiffs' Choice of Forum Should Receive Little Weight

Finally, RealPage anticipates that Plaintiffs will seek to have this Court defer to their choice of forum in Ohio.  However, the plaintiff's forum choice in a nationwide class action is generally regarded as inconsequential because, where class members reside in numerous federal districts across the country, "there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class' claim."  *Byerson*, 467 F. Supp. 2d at 633; *accord* 17 MOORE'S FED. PRACTICE - CIVIL 111.13[1][c][ii].  Thus, Plaintiff's choice of forum is entitled to little, if any deference, in this context.

- 17 -

Accordingly, if the Court declines to dismiss the case, this matter should be transferred to the Northern District of Texas, Dallas Division, based on the convenience of the parties and witnesses and in the interests of justice. *See, e.g.*, *King v. Corelogic Credco, LLC*, No. 17-cv-761, 2018 U.S. Dist. LEXIS 99467, *21 (E.D. Va. June 13, 2018) (transferring putative nationwide FCRA class action to the principal place of business of the defendant: "Although King has brought this action in her home forum, alone cannot defeat the Motion to Transfer, especially because her choice of forum receives less weight in this putative class case. Furthermore, because the Eastern District of Virginia is not home to the nucleus of operative facts, King's choice of forum is entitled to less weight. The convenience to the parties and witnesses strongly favors transfer. Finally, the interest of justice also suggests that transfer is proper.").

## CONCLUSION

For the foregoing reasons, RealPage respectfully requests that this Court: (1) enter an order dismissing the Complaint for lack of personal jurisdiction; or (2) in the alternative, enter an order transferring this case to the Northern District of Texas, Dallas Division.

Dated: June 10, 2019

TROUTMAN SANDERS LLP

By:    /s/ Ronald I. Raether
Ronald I. Raether (Bar No. 0067731)
5 Park Plaza, Suite 1400
Irvine, California 92614
Tel: (949) 622-2700
Fax: (949) 622-2739
Ron.Raether@troutman.com

*Attorneys for Defendant*
*RealPage Inc., d/b/a LeasingDesk Screening*

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1(F)

Pursuant to Local Rule 7.1(f), the undersigned counsel certifies that subject to further discussion at the CMC, the Court has recommended that this case be assigned to the standard track, (Dkt. No. 6), and that the above Memorandum adheres to the page limitations for standard track cases.  Specifically, the above Memorandum is less than twenty pages in length.

Dated: June 10, 2019                              TROUTMAN SANDERS LLP

                                                  By:      /s/ Ronald I. Raether
                                                           Ronald I. Raether (Bar No. 0067731)
                                                           5 Park Plaza, Suite 1400
                                                           Irvine, California 92614
                                                           Tel: (949) 622-2700
                                                           Fax: (949) 622-2739
                                                           Ron.Raether@troutman.com

                                                           *Attorneys for Defendant*
                                                           *RealPage Inc., d/b/a LeasingDesk Screening*